UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| KONI RENAE' SULT,<br>    Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL,<br>Commissioner of the Social Security<br>Administration,<br>    Defendant. | CAUSE NO.: 2:18-CV-237-JEM |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Koni Renae Sult, *pro se*, on June 14, 2018, and Plaintiff's Opening Brief [DE 17], filed November 26, 2018. Plaintiff requests that the decision of the Administrative Law Judge be reversed. On December 27, 2018, the Commissioner filed a response. For the reasons described below, the Court remands this matter for further proceedings.

**I.    Background**

On June 23, 2014, Plaintiff filed an application for benefits alleging that she became disabled on December 4, 2013. Plaintiff's application was denied initially and upon reconsideration. On March 14, 2017, Administrative Law Judge ("ALJ") Romona Scales held a video hearing, at which Plaintiff, with an attorney and a vocational expert ("VE"), testified. On July 27, 2017, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

1

2. The claimant has not engaged in substantial gainful activity since December 5, 2013, the alleged onset date.

3. The claimant has the following severe impairments: bilateral carpal tunnel syndrome status post surgery; obesity; degenerative disc disease of the cervical and lumbar spine status post lumbar and cervical fusions; and anxiety.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity ("RFC") to lift and carry up to 10 pounds occasionally and nominal weight frequently, stand and/or walk for about 2 hours of an 8 hour workday and sit for about 6 hours of an 8 hour workday. She should be allowed to alternate between sitting and standing for up to ten minutes each hour, but would remain on task at her workstation. She can occasionally balance, stoop, crouch, kneel and climb ramps/stairs. She is unable to crawl or climb ladders, ropes or scaffolds. She is occasionally able to push/pull with the upper and lower extremities and operate foot controls. She is unable to reach overhead bilaterally. She can frequently handle, finger, and reach in all other directions. She is unable to reach overhead bilaterally. She should avoid even moderate exposure to extreme cold, vibrations, or workplace hazards such as slipper/uneven surfaces, moving mechanical parts, and unprotected heights. She can understand, remember, and carry out simple routine tasks and instructions; maintain adequate attention and concentration for such tasks/instructions; is limited to brief and superficial interaction with supervisors and occasional and brief superficial interaction with the general public. She is to avoid tasks requiring fast paced production or quotas and can manage the changes in a routine work setting.

6. The claimant is unable to perform any past relevant work.

7. The claimant was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has

>    transferable job skills.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from December 5, 2013, through the date of this decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.    Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227

F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Analysis

Plaintiff filed a single-page letter in lieu of an opening brief, requesting that this Court reverse the ALJ's decision. Plaintiff suggests in her letter that her attorney was unprepared and failed to present her records at the administrative hearing. Plaintiff also argues that the ALJ erred in assessing her symptoms, particularly her need to lie down and her "emotional outbursts," and that the ALJ erred in concluding she was disabled based on the medical evidence.

First, Plaintiff alleges that her attorney was "not prepared," and failed to update the medical record. The quality of a claimant's representation may create a basis for remand. *Smith v. Secretary of Health, Ed. and Welfare*, 587 F.2d 857, 860 (7th Cir. 1978) (citing *Arms v. Gardner*, 353 F.2d 197 (6th Cir. 1965)). At the hearing, Plaintiff's counsel stated that he had difficulty uploading some of Plaintiff's medical record. AR 90. He stated that he had digitized more updated information and would upload that information after the hearing. AR 92. The ALJ specifically noted a gap in the record from 2015-2017, and asked the attorney for updated records from that time period. *Id.* The ALJ stated that she would keep the record open for two weeks following the hearing to permit the additional information. AR 93. Plaintiff seems to assume that her attorney never updated the medical record, or that the failure to update the record before the hearing somehow prejudiced the ALJ against her. However, the ALJ explicitly permitted counsel to update the record after the hearing, and numerous medical records were added, including records from the time period noted by the ALJ. *See* AR 2483-2778. Plaintiff's letter has not shown that her counsel's representation was inadequate.

Plaintiff argues in her letter that the ALJ failed to account for her "lay down-Crash time" in finding that she was not disabled. When determining a claimant's subjective symptoms, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. § 404.1529(a); SSR 16-3p, 2017 WL 5180304

5

(October 25, 2017). The ALJ is not permitted to

> make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." . . . The decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the evaluated the individual's symptoms.

SSR 16-3p, 2017 WL 5180304 at *9. "[T]he absence of objective medical corroboration for a complainant's subjective accounts of pain does not permit an ALJ to disregard those accounts." *Ghiselli v. Colvin*, 837 F.3d 771, 777 (7th Cir. 2016); see also *Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014) ("[T]he ALJ erred in rejecting [the plaintiff]'s testimony on the basis that it cannot be objectively verified with any reasonable degree of certainty. An ALJ must consider subjective complaints of pain if a claimant has established a medically determined impairment that could reasonably be expected to produce the pain.").

In this case, the ALJ's analysis of Plaintiff's headaches, and her need to take breaks, was inadequate. Addressing Plaintiff's symptoms generally, the ALJ found that "[t]he degree of the claimant's complaints are not supported by the treatment she has undergone or the objective findings." Addressing her headaches directly, the ALJ stated that "the claimant testified that she experiences migraines 1-2 times per month," but that a medical report from August 2016 noted she had not had a migraine in six months. The ALJ also summarized a treatment note from December 2016 as indicating that Plaintiff was "doing well."

Plaintiff's complaints of headaches were more extensive than the ALJ suggested, and the ALJ did not draw a logical bridge from the evidence to her conclusion that her complaints were "not supported." Plaintiff reported cluster headaches, occurring daily, dating back to her alleged date of onset. AR 2259. She completed a headache questionnaire indicating that the headaches arose from

6

stress and concentrating, among other causes. She treated the headaches by taking medication, using an ice pack or cold washcloth, and going into a dark, quiet room. AR 301. In August 2015, she described that the headaches had "intensified recently." AR 2282. In August 2016, Plaintiff reported new migraine headaches, different in scope and intensity from the headaches she had previously reported. *See* AR 2485, AR 2603. At that time, Plaintiff's doctor noted that she had not had a migraine for six months, but did not specifically address the cluster headaches. AR 2485. Plaintiff's migraines were treated with medication, and in December 2016, the treating physician noted that it was "helping," but that she still had mild headaches. AR 2544. The ALJ appeared to rely on this report, and the physician's note in the report that Plaintiff was "doing much better" and the medication gave her no side effects, to conclude that Plaintiff's complaints were unsupported. But the ALJ did not explain why that report led to the conclusion that the migraine headaches – or the cluster headaches – would not cause functional limitations. *Smith v. Astrue*, 467 F. App'x 507, 511 (7th Cir. 2012) (remanding where the ALJ's opinion "tick[ed] off certain medical evidence, but did not "specify how the evidence undermines [the plaintiff's] credibility"). The fact that Plaintiff was doing "much better" in December 2016 than in August 2016, when she reported a pain level of 8 out of 10 with nausea and dizziness, was not a reason to discount Plaintiff's complaints of headaches. Neither the doctor nor the ALJ addressed whether Plaintiff would need to take breaks when she did get headaches, leaving the Court without a "logical bridge" to the ALJ's apparent conclusion that they did not cause functional limitations. *See O'Connor-Spinner*, 627 F.3d at 618.

The ALJ also failed to adequately address Plaintiff's mental faculties in the RFC. At step two, the ALJ found that Plaintiff had mild limitations in understanding, remembering and applying information, moderate limitation in interacting with others, and moderate limitations in

7

concentration, persistence and pace. The ALJ also found Plaintiff's anxiety to be a "severe impairment." At step three, the ALJ concluded that Plaintiff could "understand, remember, and carry out simple routine tasks and instructions; maintain adequate attention and concentration for such tasks/instructions." The RFC limited Plaintiff to "brief and superficial interaction with supervisors and occasional and brief superficial interaction with the general public. She is to avoid tasks requiring fast paced production or quotas and can manage the changes in a routine work setting."

As the Seventh Circuit Court of Appeals has explained, a limitation to unskilled work is generally insufficient to account for moderate limitations in concentration, persistence, or pace because "[t]he ability to stick with a task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620-21 ("In most cases . . . employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace."); *see also Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (rejecting the contention "that the ALJ accounted for [the plaintiff]'s limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public").

In this case, the record indicates that Plaintiff had the kind of difficulties that could not be accounted for by a limitation to simple tasks and brief interactions. Plaintiff stated that due to her anxiety, she had difficulty being around other people or out in public, and needed to know ahead of time if she was going out in public, to "prepare herself mentally." AR 124. She reported "a lot" of crying spells, AR 116, and her husband indicated in a third-party function report that she "can't really handle" stress. AR 320. Plaintiff also testified that she did not take her medications on the day

8

of the hearing, because they affected her concentration and made her "hazy." AR 119-120. Despite the ALJ's general statement that "the degree of the claimant's complaints are not supported by the treatment she has undergone or the objective findings," she never cited any medical evidence contradicting those allegations, or gave any reasons why they should be deemed as "not supported." The ALJ noted that Plaintiff's concentration appeared intact during a consultation with a psychiatrist, but did not address the evidence that Plaintiff would struggle to maintain that level of performance consistently enough to maintain a job. *See Jelinek v. Astrue*, 662 F.3d 805, 813-14 (7th Cir. 2011) (concluding that limitations to unskilled work did not "address[] the impact of the mental limitations . . . which . . . limited [the plaintiff]'s ability to maintain regular work attendance, to carry out instructions, and to deal with the stresses of full-time employment"); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (finding that a limitation to unskilled work did not account for limitations in concentration, pace, and mood swings); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[A] plaintiff who suffers from mental illness will have better days and worse days, so a snapshot of any single moment says little").

On remand, the Court directs the ALJ to conduct a thorough analysis of the medical evidence, and solicit additional opinions if appropriate. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusion."). The ALJ must also analyze Plaintiff's subjective complaints in the manner prescribed by SSR 16-3p, explaining which symptoms he or she finds consistent or inconsistent with the evidence, and draw a "logical bridge" between the evidence and his or her conclusions.

## IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Opening Brief [DE 17] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 10th day of September, 2019.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record